U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2005 JUN 24  P 12: 02

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Randolph Chambers

v.                                    Case No. 05-fp-219

New Hampshire State Prison
Medical Department, et al.

### REPORT AND RECOMMENDATION

Proceeding *pro se* Randolph Chambers has filed a complaint
pursuant to 42 U.S.C. § 1983, alleging violations under the
Eighth Amendment to the United States Constitution, Title II of
the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132,
et seq. and New Hampshire state law (document nos. 1 and 5).
Seeking declaratory, injunctive and monetary relief, he brings
this action against the New Hampshire State Prison ("NHSP")
Medical Department and four NHSP employees: Nurse Brad;
Lieutenant Guimond; Unit Manager C. Thying; and J. Leeka.

The complaint is before me for preliminary review to
determine whether, among other things, it states a claim upon
which relief may be granted.  See 28 U.S.C. § 1915A; U.S.
District Court for the District of New Hampshire Local Rule
("LR") 4.3(d)(2).  For the reasons stated below, I find that

Chambers has alleged Eighth Amendment claims premised on the denial of adequate medical care against Guimond, Brad, Leeka and Thying. I recommend dismissal of all remaining claims.

## Standard of Review

In reviewing a *pro se* complaint, this court must construe the pleading liberally and in favor of the *pro se* litigant. See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)). At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that *pro se* pleadings are given fair and meaningful consideration. See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988). I apply this standard in reviewing Chambers' complaint.

## Background

Crediting the factual allegations in Chambers' complaint as true, the material facts appear to be as follows. Chambers is

2

currently incarcerated at the NHSP.  During the course of his
incarceration in June 2005, defendants allegedly provided him
with inadequate and negligent medical care.

Although Chambers has not provided sufficient information as
to the exact nature of his medical condition, he claims to suffer
from a respiratory condition that at times obstructs his ability
to breathe.  He further claims to have been prescribed an
inhaler, Albuterol, to treat his symptoms.  In June 2005,
Chambers began experiencing respiratory problems and difficulty
breathing due to heat and humidity.  On June 5, 2005, he
submitted an inmate request slip to Guimond in which he requested
that the disciplinary sanctions issued against him be lifted and
his canteen privileges restored.  Chambers informed Guimond of
his medical condition and need for an inhaler and explained that
the loss of canteen privileges prevented him from purchasing a
fan that was necessary to alleviate his respiratory symptoms.  In
his response of June 6, 2005, Guimond stated that Chambers
"should have thought of that prior to violating the rules of this
institution - request denied."

On June 7, 2005, Chambers was evaluated by Nurse Brad and
explained his breathing difficulties and requested a medical pass

3

in order to purchase a fan.  Brad responded that the medical

department does not issue medical restriction passes to purchase

fans.  He also failed to check Chambers' pulse, heart rate and

blood pressure and denied his request to be evaluated by a

physician or nurse practitioner.

On June 7, 2005 and June 10, 2005, Chambers submitted inmate

request slips to Leeka in which he explained his physical

problems and need for a fan to alleviate his symptoms.  Leeka

responded to the respective requests on June 8, 2005 and June 10,

2005, stating that the medical department does not issue passes

for fans or other items related to inmates' housing units and

further stated that climate control, heat and coldness conditions

are not the responsibility of the medical department.  She

advised Chambers to consult the security staff of the closed

custody unit ("CCU").  Leeka allegedly intercepted Chambers'

requests slips addressed to Dr. Englander and on June 10, 2005

ordered Chambers to no longer contact Englander about his

problem.

On June 13, 2005, Chambers advised Thying, his unit manager

in the CCU, about his physical problems and related symptoms and

need for a fan.  Thying failed to take any actions to remedy the

4

problem and referred Chambers to the medical department.   On June

10, 2005 and June 18, 2005, Chambers filed inmate request slips

with Dr. Englander in which he reiterated his physical problems

and requested a medical pass in order to purchase a fan.   It is

unclear whether Englander received or responded to his requests.

Chambers now brings this civil rights action, alleging that

defendants' acts and omissions and resulting deprivations violate

his federally protected rights under the Eighth Amendment of the

United States Constitution and Title II of the ADA.   He also

alleges negligence claims under New Hampshire state law.

## Discussion

### I. Section 1983 Claims

Section 1983 creates a cause of action against those who,

acting under color of state law, violate federal law.   See 42

U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981);

Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).   In

order to be held liable for a violation under Section 1983, a

defendant's conduct must have been a cause in fact of the alleged

constitutional deprivation.   See Monell v. Dep't of Soc. Servs.,

436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62

(1st Cir. 1997).   The premise of Chambers' Section 1983 claim is

5

that the defendants, acting under color of state law, denied him

adequate medical care in violation of his rights under the Eighth

Amendment to the United States Constitution and Title II of the

ADA.

A. Eighth Amendment Claims

Chambers alleges that defendants violated his rights under

the Eighth Amendment[1] by withholding essential health care.  To

state an Eighth Amendment claim premised on inadequate medical

care, "a prisoner must allege acts or omissions sufficiently

harmful to evidence deliberate indifference to serious medical

needs."  See Estelle, 429 U.S. at 97.  In order to be found

deliberately indifferent, a prison official "must both be aware

of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw

the inference."  Id.  See Farmer v. Brennan, 511 U.S. 825, 837

(1993).  Deliberate indifference may be manifested by prison

doctors in their response to the prisoner's needs or by prison

personnel "intentionally denying or delaying access to medical

care or intentionally interfering with the treatment once

---

[1]The Fourteenth Amendment makes the Eighth Amendment
applicable to state actors.  See DesRosiers v. Moran, 949 F.2d
15, 17 (1st Cir. 1991).

6

prescribed." Estelle, 429 U.S. at 104-05. "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995)(quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).

Here, the complaint alleges sufficient facts to state an Eighth Amendment claim for the denial of adequate medical care. First, Chambers has described a serious respiratory condition and related symptoms and claims to have difficulty breathing as a result of his medical condition.

Second, he has demonstrated deliberate indifference with respect to the defendants by alleging that once they were notified of his serious medical needs, they nevertheless denied him essential care. As evidenced by Chambers' attached exhibits, he reported his condition to Guimond, Brad, Leeka and Thying in June 2005 and explained that he was experiencing difficulty breathing and requested a fan to alleviate his symptoms. Defendants failed to take any actions to ensure that Chambers received adequate medical care and further failed to afford him

an evaluation by a physician or nurse practitioner. If true, the allegations demonstrate that defendants' actions and omissions prevented Chambers from receiving prompt and essential medical treatment for a serious condition. Accordingly, I find that Chambers has stated Eighth Amendment claims premised on the denial of adequate medical care against Guimond, Brad, Leeka and Thying.

Chambers also alleges negligence claims against the defendants based on the alleged denial of inadequate medical care. Although the facts alleged in support thereof sound only in negligence, because the negligence claims are "so related . . . that they form part of the same case or controversy" of the Eighth Amendment claims, I conclude that this court may exercise its supplemental jurisdiction power over the negligence claims as well. See 28 U.S.C. § 1367(a)(providing for supplemental jurisdiction over claims that are so related they form part of the same case or controversy).

B.    ADA Claims

Chambers broadly alleges that defendants denied him adequate medical care in violation of the ADA. I construe his claim to allege a violation of Title II of the ADA, which provides that

8

"no qualified individual with a disability shall, by reason of
such disability, be excluded from participation in or be denied
the benefits of the services, programs, or activities of a public
entity, or be subjected to discrimination by any such entity."
42 U.S.C. § 12132. The provisions of Title II apply to inmates
in state prisons. See Pennsylvania Dep't of Corrections v.
Yeskey, 524 U.S. 206, 209-10 (1998). "[P]risons provide inmates
with many recreational 'activities,' medical 'services,' and
educational and vocational 'programs,' all of which at least
theoretically 'benefit' the prisoners (and any of which disabled
prisoners could be 'excluded from participating in.'" Id. at
210.

To state a claim under Title II, a plaintiff must allege:
"(1) that he is a qualified individual with a disability; (2)
that he was either excluded from participation in or denied the
benefits of some public entity's services, programs, or
activities or was otherwise discriminated against; and (3) that
such exclusion, denial of benefits, or discrimination was by
reason of the plaintiff's disability." Parker v. Universidad de
P.R., 225 F.3d 1, 5 (1st Cir. 2000).

Here, Chambers has not alleged discrimination or that he was

9

treated worse than other inmates on the basis of his alleged disability. Nor does he allege that he was denied access to a service, program or activity on the basis of his disabled status. The complaint merely alleges that he was provided with inadequate and negligent medical treatment. The ADA is not violated 'by a prison's failing to attend to the medical needs of its disabled prisoners." Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996). And "[t]he ADA does not create a remedy for malpractice." Id. Because Chambers insufficiently alleges that his rights under the ADA were violated, I recommend that his claim be dismissed in its entirety.

## II. Official Capacity

Construed liberally, the complaint seeks declaratory, injunctive and monetary relief for wrongs committed by the defendants as state actors in their official capacities. It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State

nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983). Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. To the extent Chambers brings official capacity claims for monetary relief against the defendants, all of whom are NHSP officials or employees, I recommend such claims be dismissed.

On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983. See Will, 491 U.S. at 71 n.10. Thus, Chambers is not barred from bringing viable claims for prospective injunctive relief against the defendants in their official capacities.

## Conclusion

For the reasons stated above, I find that Chambers has alleged Eighth Amendment claims premised on the denial of adequate medical care against Guimond, Brad, Leeka and Thying. I recommend dismissal of all remaining claims. Accordingly, by

11

separate order issued simultaneously with this report and
recommendation, I authorize the above viable claims to proceed.

If this recommendation is approved, the claims as identified
in this report and recommendation, will be considered for all
purposes to be the claims raised in the complaint.  If the
plaintiff disagrees with the identification of the claims herein,
he must do so by objection filed within ten (10) days of receipt
of this report and recommendation, or he must properly move to
amend the complaint.

Any further objection to this report and recommendation must
be filed within ten (10) days of receipt of this notice.  Failure
to file objections within the specified time waives the right to
appeal the district court's order.  See 28 U.S.C. § 636(b)(1);
see also Unauthorized Practice of Law Committee v. Gordon, 979
F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete,
792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: June 24, 2005
  cc: Randolph Chambers, pro se